Lesley Weaver (SBN 191305)
BLOCK & LEVITON LLP
610 16th Street, Suite 214
Oakland, California 94612
Tel.: (415) 968-8999
Fax: (617) 507-6020
lweaver@blockesq.com

*Attorney for Plaintiff Valerie Marie Moore*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFF VALERIE MARIE MOORE on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.<br><br>    Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Valerie Marie Moore ("Plaintiff"), through her undersigned attorneys, on behalf of herself and all persons similarly situated, complain against Uber Technologies, Inc. ("Uber" or "Defendant"), as follows:

## INTRODUCTION

1.     Plaintiff brings this action for damages resulting from the illegal actions of Uber Technologies, Inc. ("Uber" or "Defendant"). Uber sent unauthorized text messages to Plaintiff's cellular telephone in violation of the Telephone Consumer Protections Act, 47 U.S.C. § 227, *et seq*. (the "TCPA").

2.     Defendant is a developer of a sophisticated smart phone application to connect individuals who need transportation services to drivers across the world.

3.     In an effort to promote its services, Defendant, through its agents, engaged in an invasive and unlawful form of marketing: the transmission of unauthorized advertisements in the form of SMS "text message" calls to cellular telephones belonging to consumers throughout the nation.

1    4.      By transmitting these unauthorized text message calls (hereinafter, "wireless spam"

2    or "SMS Messages"), Defendant has violated consumers' statutory and privacy rights and has

3    caused consumers actual harm, not only because consumers were subjected to the aggravation and

4    invasion of privacy that necessarily accompanies wireless spam, but also because cell phone users

5    like Plaintiff have to pay their respective wireless service providers either for each SMS Message

6    they receive, incur a usage allocation deduction from the total number of text messages allowed

7    under their cell phone plan, or pay a fixed or variable usage fee.

8    5.      Plaintiff has also responded to Defendant's SMS Messages requesting that Defendant

9    stop sending SMS Messages.  In spite of this request, Plaintiff received additional subsequent text

10   messages from Defendant.

11   6.      In April 2012, the PEW Research Center found that 69% of text message users

12   reported receiving unwanted spam text messages, with 25% reporting receiving spam texts weekly.[1]

13   And according to a December 2014 article, numerous complaints have been filed with the FTC in

14   which the complainant alleges that, like Plaintiff, he or she has been unable to stop Defendant's text

15   messages, despite repeatedly telling Defendant to "stop."[2]

16   7.      In order to redress these injuries, Plaintiff brings this suit under the TCPA, which

17   prohibits, *inter alia*, unsolicited SMS Messages to cellular phones.

18   8.      Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities

19   and an award of actual and statutory damages, together with costs and reasonable attorneys' fees.

**PARTIES**

21   9.      Plaintiff is a resident of Duval County, Florida and is a "natural person" as defined

22   by 47 U.S.C. § 153(39).

23   10.      Defendant Uber Technologies, Inc. is an operator of a worldwide transportation

24   service and developed a mobile application to connect consumers with its drivers. Uber is a

25

26

27   [1] http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet (last visited June 7, 2016);
*See also* Spam Invades the Last Refuge, the Cellphone, *New York Times*, April 8, 2012, ("In the
United States, consumers receive roughly 4.5 billion spam text messages [per year]").
28   [2] http://motherboard.vice.com/read/ubers-text-message-spam-is-driving-people-crazy (last visited
June 8, 2016).

COMPLAINT

Delaware corporation with its principle place of business in California. It is an incorporated "person" as defined by 47 U.S.C. § 153(39), and conducts business throughout the United States, Florida, and the world.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d).  Plaintiff and members of the Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs, and is a class action in which any member of the class of plaintiffs is a citizen of a state different from any defendant. This Court also has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, pursuant to Defendant's violation of the TCPA.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Uber is a resident of this District and significant events giving rise to this case took place in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

13.     Prior to passing the TCPA, Congress determined that it was necessary to stop abusive telemarketing practices and protect consumers from invasions of privacy, harassment, and economic harm. The House Committee on Energy and Commerce determined that "expert testimony, data, and legal analyses comprising the Committee's record, and broad support of consumers, state regulators, and privacy advocates clearly evidence that unsolicited commercial telemarketing calls are a widespread problem and a federal regulatory solution is needed . . ." H.R. Report No. 102-317, 1991 WL 245201 at *18 (Nov. 15, 1991). The Senate Committee on Commerce, Science, and Transportation also found that "the Federal Communications Commission (FCC) received over 2,300 complaints about telemarketing calls" in the year preceding the TCPA's passage, stating *inter alia* that "unsolicited calls placed to . . . cellular . . . telephone numbers often impose a cost on the called party (. . . [where, e.g.] cellular users must pay for each incoming call . . .)." *See* S. Report No. 102-178, 1991 U.S.C.C.A.N. 1968, 1991 WL 211220 at *2 (Oct. 8, 1991).

14.     When it passed the TCPA, Congress determined that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."  Pub. L. No. 102–243, § 11.  It also

stated that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls," and that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy . . . ."  Id. at §§ 12-13.

15.     The TCPA regulates, *inter alia*, the use of automated telephone dialing systems ("ATDS").

16.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person called.

17.     Section §227(a)(1) of the TCPA defines an ATDS as equipment having the capacity:

> (A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)     to dial such numbers.

18.     In 2015, the Federal Communication Commission ("FCC") reaffirmed its long-standing position that ATDS has a broad meaning:

> Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the "capacity" to dial random and sequential numbers, rather than the "present ability" to do so. Hence, any equipment that has the requisite "capacity" is an autodialer and is therefore subject to the TCPA.

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC Declaratory *Ruling*, 30 F.C.C. Rec'd 7961, ¶ 15 (July 10, 2015) ("2015 FCC Ruling").

19.     "Prior express written consent" is required before making automated telemarketing calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200; *see also* 2015 FCC Ruling at ¶ 98.

20.     The FCC has also affirmed that SMS Messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common

-4-

COMPLAINT

carrier service, or any service for which the party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 5 Report and Order, 18 FCC Red. 14014, ¶ 165 (July 3, 2003); restated in 2015 FCC Ruling at ¶ 116 n.395.

## **FACTS**

21.     Since June 2014, Defendant has sent dozens of text messages to Plaintiff's cellular telephone number ending in 8235.

22.     In or around June of 2014, Plaintiff began an application to become an Uber driver through Uber's website.  Plaintiff did not complete the process to become an Uber driver.

23.     Plaintiff did not at any point during her incomplete sign-up process provide express consent or express written consent to receive automated SMS Messages to her cell phone.

24.     Shortly thereafter, Plaintiff began to receive on her cellular telephone a first wave of text messages inquiring into whether Plaintiff needed help finishing her account, and inviting Plaintiff to speak with a local Uber representative. The texts were extremely frequent, and Plaintiff sometimes received multiple texts from Defendant each day. On October 16, 2014, Plaintiff sent a message reading "Stop" to the phone number (484) 575-4075. This caused a brief respite from the unwanted text messages. But it did not last long.

25.     Despite her clear indication that she did not want to receive text messages (by texting "Stop" to the number that was sending her messages), Plaintiff received a second wave of text messages from Defendant in November 2014. Similar to the first wave, these texts were extremely frequent, as she often received multiple per day. At no time did Plaintiff provide express consent to receive these text messages.

26.     Plaintiff has suffered actual injury as a result of Defendant's texts, including, but not limited to, paying a fixed monthly rate to receive text messages, including the SMS Messages at issue here, on her phone; loss of storage space on her cellular telephone due to the unsolicited SMS Messages; invasion of privacy; nuisance; and lost time tending to and responding to the unsolicited

text messages.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class

defined as:

> Plaintiff and all persons within the United States to whose cellular telephone
> number Defendant Uber Technologies, Inc. sent—from July 11, 2012 through the
> date of class certification—a non-emergency text message on their cellular
> telephone, without their prior express written consent, via an ATDS.

(the "Class")

28.     Excluded from this class are Defendant and any entities in which Defendant has a

controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom

this action is assigned and any member of their staffs and immediate families, and any claims for

personal injury, wrongful death, and/or emotional distress.

29.     The Class members for whose benefit this action is brought are so numerous that

joinder of all members is impracticable.

30.     The exact number and identities of the Class members are unknown at this time and

can only be ascertained through discovery. Identification of the Class Members is a matter capable

of ministerial determination based on Defendant's records.

31.     The Class is comprised of hundreds, if not thousands, of individuals nationwide.

32.     There are common questions of law and fact affecting the rights of the Class

members, including, *inter alia*, the following:

> a.      Whether Defendant Uber used an ATDS in sending SMS Messages;
>
> b.      Whether Defendant Uber took adequate steps to acquire and/or track consent;
>
> c.      Whether Defendant can meet its burden of showing it obtained prior express
>
>         written consent to send each message;
>
> d.      Whether Plaintiff and the Class were damaged thereby, and the extent of
>
>         damages for such violations;
>
> e.      Whether Defendant's conduct was knowing and/or willful; and
>
> f.      Whether Defendant should be enjoined from engaging in such conduct in the

COMPLAINT

1       future.

2       33.     Plaintiff's claims are typical of the Class members' claims in that they arise from

3   Defendant's uniform conduct and are based on the same legal theories as Class members' claims.

4       34.     Plaintiff and all putative Class members have also necessarily suffered actual

5   damages in addition to statutory damages, as all Class members spent time tending to Defendant's

6   unwanted text messages and, due to the nature of text messages, the text messages at issue took up

7   space on putative Class members' devices, used Class members' cellular telephone plans, caused a

8   nuisance to Class members, and invaded Class members' privacy.

9       35.     Plaintiff has no interests antagonistic to, or in conflict with, the Class.

10      36.     Plaintiff will thoroughly and adequately protect the interests of the Class, having

11  retained qualified and competent legal counsel to represent himself and the Class.

12      37.     Defendant has acted and refused to act on grounds generally applicable to the Class,

13  thereby making injunctive and declaratory relief appropriate for the Class as a whole.

14      38.     The prosecution of separate actions by individual Class members would create a risk

15  of inconsistent or varying adjudications.

16      39.     A class action is superior to other available methods for the fair and efficient

17  adjudication of the controversy since, *inter alia*, the damages suffered by each Class member make

18  individual actions uneconomical.

19      40.     Common questions will predominate, and there will be no unusual manageability

20  issues.

## COUNT I
### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

23      41.     Plaintiff repeats and re-alleges the above paragraphs of this complaint and

24  incorporates them herein by reference.

25      42.     Defendant sent multiple automated SMS Messages to a cellular number belonging to

26  Plaintiff without her prior express consent or prior express written consent.

27      43.     Each of the aforementioned messages sent by the Defendant constitutes a violation of

28  the TCPA.

COMPLAINT

44.     Plaintiff is entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

45.     Additionally, Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct by Defendant in the future.

**COUNT II**
**Knowing and/or Willful Violations of The Telephone Consumer Protection Act,**
**47 U.S.C. § 227, _et seq._,**

47.     Plaintiff repeats and re-alleges all above paragraphs of this Complaint and incorporates them herein by reference.

48.     Defendant knowingly and/or willfully sent multiple automated text messages to cellular telephone numbers belonging to Plaintiff without her prior express consent or prior express written consent.

49.     Each of the aforementioned messages sent by Defendant constitute a knowing and/or willful violation of the TCPA

50.     As a result of the Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

51.     Additionally, Plaintiffs seek and are entitled to injunctive relief prohibiting such conduct by Defendant in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff the following relief against Defendant as follows:

1.     An order certifying the Class as defined above, appointing Valerie Marie Moore as the representative of the Class, and appointing her counsel as Class Counsel;

2.     An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227;

3.     Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

4.     Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

COMPLAINT

5.      Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

6.      An award of attorneys' fees and costs to counsel for Plaintiff; and

7.      Such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs demand trial by jury on all counts for which a jury trial is permitted.

Dated: July 11, 2016                              Respectfully submitted,


*/s/ Lesley E. Weaver*_____

BLOCK & LEVITON LLP
Lesley Weaver (SBN 191305)
610 16th Street, Suite 214
Oakland, California 94612
Tel.: (415) 968-8999
Fax: (617) 507-6020
lweaver@blockesq.com

*Attorney for Plaintiff Valerie Marie Moore*

COMPLAINT